

ORDERED in the Southern District of Florida on April 15, 2024.

Robert A. Mark, Judge
United States Bankruptcy Court
_____

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

| | |
|---|---|
| In re: | Case No. 21-21964-RAM |
| ILAN DORON, NCM GROUP, LLC, NCM WIRELESS, LLC, and NCM HOLDINGS, INC. | Chapter 7 (Substantively Consolidated) |
| Debtors. _____/ | |
| MARCIA T. DUNN, Chapter 7 Trustee, | |
| Plaintiff, | |
| v. | Adv. Proc. No. 23-01268-RAM |
| JPMORGAN CHASE BANK, N.A., | |
| Defendant. _____/ | |

## ORDER GRANTING DEFENDANT'S
## MOTION TO DISMISS WITH LEAVE TO AMEND

The trustee's complaint to avoid fraudulent transfers in this proceeding relies on a

1

substantive consolidation order that preserves avoidance actions on behalf of each consolidated debtor. What happens if the consolidation order is not enforceable against the defendant because the defendant was not properly served with the consolidation motion? As described below, the complaint must be dismissed and amended to include the underlying basis for substantive consolidation, including the basis for preserving avoidance actions.

## Background

The Court held a hearing on April 3, 2024 on JPMorgan Chase Bank, N.A.'s Motion to Dismiss Complaint [DE# 11] (the "Motion to Dismiss") filed by Defendant, JPMorgan Chase Bank, N.A. ("JPMC"), Plaintiff's Response in Opposition to the Defendant's Motion to Dismiss Adversary Complaint [DE# 16] filed by Plaintiff, Marcia T. Dunn, Chapter 7 Trustee (the "Trustee"), and the Defendant's reply in support [DE# 17]. For the reasons stated on the record at the hearing and upon further consideration following the hearing, the Court is granting the Motion to Dismiss with leave to amend certain counts of the Complaint. This Order includes a discussion of why the section 548 claims in three of the counts must be dismissed with prejudice and includes a finding that, if it later becomes relevant, the Trustee cannot rely on the Internal Revenue Service ("IRS") as a triggering creditor to obtain a longer look back period for her avoidance claims.

## The Underlying Chapter 7 Cases

On December 23, 2021 (the "Petition Date"), Ilan Doron (the "Debtor") filed a voluntary petition under chapter 11, subchapter V of the Bankruptcy Code. Thereafter, the Court entered an order converting the case to a case under chapter 7. DE# 361 in Main Case No. 21-21964-RAM (the "Main Case"). The Trustee was appointed as

Chapter 7 Trustee of the Debtor's estate.

On March 15, 2022, the IRS filed timely its Proof of Claim No. 49-2 against the Debtor's estate alleging (i) an assessed priority unsecured claim for 2018 income taxes, (ii) an estimated priority unsecured claim for 2019 income taxes, and (iii) a non-priority, general unsecured claim for 2017 income taxes.

On October 14, 2022, the Trustee filed a motion to substantively consolidate non-debtors NCM Group, LLC ("NCM Group"), NCM Wireless, LLC ("NCM Wireless"), and NCM Wireless Holdings, Inc. ("NCM Holdings," and together with NCM Group and NCM Wireless, the "Consolidated NCM Debtors") into the Debtor's estate. *See* DE# 408 in Main Case (the "Consolidation Motion").  On February 27, 2023, the Court entered its Order Granting Trustee's Motion to Substantively Consolidate NCM Group, LLC, NCM Wireless, LLC, and NCM Wireless Holdings, Inc. with the Debtor's Estate and Preserving Avoidance Claims [DE# 583 in the Main Case] (the "Consolidation Order").  In the Consolidation Order, the Court ordered that NCM Group, NCM Wireless, and NCM Holdings "are substantively consolidated with the Debtor's estate effective as of the date this Order becomes final and non-appealable." Consolidation Order, ¶ 5.  The Court also ordered:

> In ordering such consolidation, the Court hereby (a) preserves for the estate any state law avoidance and Chapter 5 claims held by any of the debtors pursuant to 11 U.S.C. §§ 541, 544, 547, 548, 549 and 550 as to any transfers made by such debtor; . . . [and] (c) provides that the petition date for purposes of determining the applicable §§ 546, 547 or 108 deadlines is December 23, 2021[.]

Consolidation Order, ¶ 7.  The Consolidation Order became "final and non-appealable" on March 31, 2023 as to all parties properly served with notice of the Consolidation Motion, the hearings on the Consolidation Motion, and the Consolidation Order.

3

The Trustee served the Consolidation Motion, the notices of hearing thereon, and the Consolidation Order via U.S. mail on the noticing agent/attorney that filed Proof of Claim No. 17 on behalf of JPMC. *See* Certificates of Service at DE#'s 435, 486, 508, and 587 in the Main Case.   Although an attorney filed a proof of claim on behalf of JPMC, no attorney has filed a notice of appearance on behalf of JPMC in the Main Case.

On October 11, 2023, The Court entered an order setting a bar date of December 8, 2023 for claims against the Consolidated NCM Debtors. *See* DE# 777 in the Main Case.   Notably, the IRS did not file a proof of claim against any of the Consolidated NCM Debtors, nor did the IRS amend its proof of claim against the Debtor to include assessed or estimated taxes against any of the Consolidated NCM Debtors.

## This Adversary Proceeding

On December 20, 2023, relying on the Consolidation Order, the Trustee commenced this adversary proceeding against JPMC.  In counts I through IV of the Complaint [DE# 1], the Trustee sues JPMC to avoid alleged fraudulent transfers made by NCM Group[1] to JPMC under the actual and constructive fraud provisions of section 548(a)(1)(A), (B) and under section 544(b)(1), relying on the actual and constructive fraud provisions of Fla. Stat. §§ 726.105(1)(a), (b) and 726.106(1), and to recover the alleged fraudulent transfers from JPMC pursuant to section 550 and Fla. Stat. § 726.108.

The subject transfers are detailed in Exhibit 1 to the Complaint (collectively, the "Transfers").   The Transfers total $42,248.65 and were made between March 26, 2018 and March 20, 2019.  Alternatively, in count V of the Complaint, the Trustee seeks a

---

[1] Some of the Transfers were made by NCM Wireless.   However, on June 13, 2019, NCM Wireless filed articles of conversion with the Florida Department of State, which converted NCM Wireless to NCM Group. As NCM Group is the successor in interest to NCM Wireless, all references to NCM Group shall collectively refer to NCM Group and its predecessor prior to conversion, NCM Wireless.

4

monetary judgment in the amount of the Transfers against JPMC under the theory of unjust enrichment.  In the Motion to Dismiss, JPMC seeks to dismiss all counts of the Complaint.  Because this is a motion to dismiss, the Court accepts as true the allegations in the Complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**The Complaint Must be Dismissed Because the**
**<u>Consolidation Order is Not Enforceable Against JPMC</u>**

"As a contested matter, the [Consolidation Motion] falls within the scope of FRBP 9014, which made the 7000 series of rules applicable, as in an adversary proceeding." *In re No Rust Rebar, Inc.*, 2023 Bankr. LEXIS 1748 at *30, 2023 WL 4497328 (Bankr. S.D. Fla. July 12, 2023).  Because JPMC is an "insured depository institution," Fed. R. Bankr. P. 7004(h) mandates that service of a contested matter on an insured depository institution be made by certified mail addressed to an officer of the institution.  That was not done here, nor do any of the exceptions set forth in Fed. R. Bankr. P. 7004(h) apply.  Therefore, the Consolidation Order is not enforceable against JPMC due to lack of proper service.

The Trustee argues that, even if the Consolidation Order is not binding on JPMC due to a defect in service, JPMC only has the right to contest consolidation as a defense in this proceeding.  The Court disagrees.  It would be a defense and not a basis for dismissal if the Complaint plead facts supporting consolidation and supporting preservation of avoidance claims.  It does not.  The Complaint rests solely on the enforceability of the Consolidation Order against JPMC. *See* Complaint at ¶¶ 12-14.  Because the Consolidation Order is not presently enforceable against JPMC, the Complaint must be dismissed for failure to state a claim.

The Trustee is granted leave to amend the Complaint to include allegations against JPMC supporting consolidation of the non-debtor NCM entities with the individual Debtor's estate, allegations supporting the preservation of avoidance actions and allegations supporting use of the Debtor's petition date as the appropriate look back date for purposes of avoiding fraudulent transfers.

## The IRS Cannot Be Used as a Triggering Creditor

Although the issue is not yet ripe, the Court is addressing the Trustee's potential use of the IRS as a triggering creditor because the issue was argued at the hearing on the Motion to Dismiss. As described earlier, in counts I, II, and III of the Complaint, the Trustee seeks to avoid the Transfers made to JPMC under the actual and constructive fraud provisions of section 544(b)(1) incorporating Fla. Stat. § 726.105(1)(a), (b). Section 544(b)(1) allows the Trustee to "step into the shoes" of a creditor holding an allowed unsecured claim against the estate (*i.e.*, a "triggering creditor") to apply state statutes of limitations in avoidance actions. Thus, the existence of a triggering creditor is an explicit element of the Trustee's claims under section 544(b).

Under Fla. Stat. § 726.110, the statute of limitations to bring fraudulent transfer claims under Fla. Stat. §§ 726.105 and 726.106 is four (4) years. However, avoidance actions that would be time-barred under state law may be timely if the plaintiff can rely on the IRS as the triggering creditor. "Under federal law, the IRS may pursue collection of taxes for ten years from the assessment date and its collection remedies include the right to avoid transfers under state law without being bound by state statutes of limitations." *Mukamal v. Citibank N.A. (In re Kipnis)*, 555 B.R. 877, 878 (Bankr. S.D. Fla. 2016) (holding that, pursuant to section 544(b), the trustee could use the IRS as a triggering

6

creditor and pursue avoidance claims that were otherwise time-barred under Florida law); *see* 26 U.S.C. §§ 6502(a)(1) and 6901(a)(1)(A).

In the Complaint, the Trustee first alleges that, as provided in the Consolidation Order, the proper date for purposes of calculating the four-year look back period for fraudulent transfers made by the Consolidated NCM Debtors is the individual Debtor's Petition Date (*i.e.*, December 23, 2021). If that is the applicable date, all the Transfers were made within the four-year period preceding the Petition Date.

JPMC disputes that the Debtor's Petition Date is the proper date for calculating the look back period. Instead, JPMC argues that the proper date is March 31, 2023, the date that the Consolidation Order became final and non-appealable. If this later date is applicable, none of the Transfers were made within the four-year period preceding March 31, 2023 and, therefore, the Trustee cannot avoid the Transfers.

Here is the Trustee's argument for using the IRS as a triggering creditor and why it fails. The Trustee alleges in the Complaint that, at the time of the Transfers, the IRS held an allowed unsecured claim against NCM Group and that the IRS could avoid the Transfers under applicable law. In her response to the Motion to Dismiss (but not in the Complaint), the Trustee argues that the IRS' Proof of Claim No. 49-2 against the Debtor reflects actual assessments for tax year 2018 and estimated amounts for tax year 2019. The Trustee further argues that the Debtor's tax liabilities arise from the income and losses generated from NCM Wireless, an S-corporation for which the Debtor was the 100% shareholder in 2018. Thus, the Trustee alleges that the IRS can serve as a triggering creditor for purposes of section 544(b)(1) and that the Trustee is entitled to the ten-year look back period provided to the IRS under federal law.

7

Citing 26 U.S.C. § 1363(a), JPMC notes that the subject taxes are S corporation passthrough taxes and, therefore, are the Debtor is liable for said taxes and not any of the Consolidated NCM Debtors.  JPMC also argues that, after entry of the Consolidation Order, the Court set a bar date for creditors (including the IRS) to file claims against the Consolidated NCM Debtors and that the IRS neither filed a proof of claim against any of the Consolidated NCM Debtors nor amended its Proof of Claim 49-2 to include assessed or estimated taxes against any of the Consolidated NCM Debtors.  Thus, JPMC concludes that the Trustee cannot rely on the IRS as a triggering creditor under section 544(b) to avoid the Transfers made by NCM Group to JPMC.

The Court agrees and concludes that, even if the Trustee properly alleges and subsequently proves substantive consolidation with regards to JPMC, the Trustee cannot rely on the IRS as a triggering creditor for purposes of section 544(b).  Whether or not the IRS had any potential income tax claims against any of the Consolidated NCM Debtors entities that were S corporations, the IRS did not file a claim against any of the Consolidated NCM Debtors.  Moreover, the Court rejects the Trustee's alternative argument that the IRS' claim against the individual Debtor may be relied upon because of the Consolidation Order.  The Trustee's avoidance claims depend upon the separateness of the individual Debtor and the transferor, NCM Group, and allegations that NCM Group did not receive reasonably equivalent value because the Transfers were made to benefit only the individual Debtor.  A finding by the Court that the IRS, as a creditor only of the individual Debtor, should be treated as a creditor of NCM Group, would be clearly inconsistent with the Trustee's underlying theory and with the preservation of avoidance actions in the Consolidation Order.

### Section 548 Claims

JPMC argues that, even if the Petition Date is used for purposes of claims under section 548, a fact that JPMC disputes, the Trustee fails to state a claim for relief under section 548 in counts I, II, and III of the Complaint because the Transfers all occurred over two years before the Petition Date. *See* 11 U.S.C. § 548(a)(1) (providing that the Trustee may avoid any transfer of an interest of the debtor in property "that was made . . . on or within 2 years before the date of the filing of the petition[.]"). Indeed, the last of the Transfers were made on March 20, 2019, which is more that two years prior to the Petition Date (*i.e.*, December 23, 2021). The Trustee conceded this point at the hearing on the Motion to Dismiss. Accordingly, the Court will dismiss the Trustee's claims under section 548 in counts I, II, and II of the Complaint with prejudice.

### Unjust Enrichment

In count V of the Complaint, the Trustee seeks a monetary judgment in the amount of the Transfers against JPMC under the theory of unjust enrichment. To prove unjust enrichment, "the plaintiff must establish that: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant knew of the benefit; (3) the defendant accepted or retained the benefit; and (4) it would be inequitable for the defendant to retain the benefit without paying for it." *Johnson v. Chase Bankcard Servs.*, 582 F. Supp. 3d 1230, 1235 (M.D. Fla. 2022) (citations omitted).

In the Motion to Dismiss, JPMC argues that the Trustee cannot, as a matter of law, state a valid claim for unjust enrichment against JPMC because "it is settled law in Florida that '[w]hen a defendant has given adequate consideration to someone for the benefit conferred, a claim for unjust enrichment fails.'" *Wiand v. Wells Fargo Bank, N.A.*, 86

F.Supp.3d 1316, 1332 (M.D. Fla. 2015) (quoting *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331-32 (Fla. 5th DCA 2007)). In other words, JPMC argues that the Trustee cannot establish element four – that it would be inequitable for JPMC to retain the benefit (*i.e.*, the Transfers) without paying for it. For purposes of this discussion, the Court assumes *arguendo* that JPMC incurred a benefit from NCM Group in the form of the Transfers paid to JPMC for the Debtor's individual credit card, and that JPMC knew of and accepted that benefit. But those facts alone do not establish unjust enrichment.

The Complaint contains only the conclusory allegation in paragraph 134 that, under the circumstances, it would be inequitable for JPMC to retain the Transfers, and the conclusory allegation in paragraph 135 that the "Defendant was unjustly enriched by virtue of the Transfers." These allegations are insufficient to state a claim for unjust enrichment. If the Trustee can ultimately establish that she has the legal right to pursue the avoidance actions, she may be able to prove that the transferor, NCM Group, received no benefit from payments made to JPMC to pay the individual Debtor's credit card bill. But that does not mean that JPMC was unjustly enriched by the Transfers because it did provide consideration, namely extending credit to the individual Debtor. Accordingly, the Court will dismiss the Trustee's claim of unjust enrichment in count V of the Complaint without prejudice.

## Conclusion

For the reasons stated on the record at the hearing and for the foregoing reasons, the Court **ORDERS** as follows:

1. The Motion to Dismiss is granted as provided herein.

2. The Trustee's claims in counts I, II, and III of the Complaint under the actual

and constructive fraud provisions of section 544(b)(1) incorporating Fla. Stat. § 726.105(1)(a), (b) are dismissed without prejudice.

3. The Trustee may not rely on the IRS as a triggering creditor for purposes of section 544(b)(1).

4. The Trustee's claims in counts I, II, and III of the Complaint under section 548 are dismissed with prejudice.

5. The Trustee's claim in count IV of the Complaint is dismissed without prejudice.

6. The Trustee's claim in count V of the Complaint for unjust enrichment is dismissed without prejudice.

7. The Trustee is granted leave to amend the Complaint, as provided herein. The deadline for the Trustee to file an Amended Complaint is <u>May 16, 2024</u>. Contemporaneous with the filing of an Amended Complaint, the Trustee must also file separately a redline copy of the Amended Complaint to highlight the changes from the initial Complaint. If the Trustee does not file an Amended Complaint by May 16, 2024, the Complaint will be deemed dismissed with prejudice and the Clerk shall close this adversary proceeding.

###

Copies to:

David Blansky, Esq.
Robert Quinn, Esq.
J. Ryan Yant, Esq.